Mr. Sigmund, I see you reserved two minutes for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor, and may it please the Court, Mark Sigmund for the appellant. The issue here is not whether the defendant can put the claim rapid release on the label of its products. It can, and we don't dispute that. What the defendant cannot do is claim that its product is faster, and therefore better than competing products, which is simply false, as we've alleged it. Let me just ask you to take a step back just to make sure we can agree on the law, because you make clear that you're not making a labeling claim, and you concede that it would be, for purposes of appeal, it would be preempted, right? Yes. And I think you would agree with this, but you can correct me if I'm wrong, that as a marketing-slash-pricing claim, if success on that required them to change the label, then that would be preempted, too. You would agree with that, right? Yes, and we don't claim that. Okay. So your theory of the case here is that it's deceptive to, at least with respect to pricing, to charge a premium for the rapid-release gel caps when they're allegedly not faster than the regular tablets, right? I would probably focus more on the marketing and the advertising in combination with the pricing and where it appears in the store, but yes. Okay, because if you focus on the pricing, if it's just because there's a premium on it, if they're on the shelves together, you would argue it's deceptive to have gel caps be two hours more right next to the regular tablets, because the consumer is going to presume that they're faster and would buy it, right? I mean, part of our claim of deception is the pricing, but also the marketing statements and advertising, right. You're getting all this time for free, by the way. The clock has stopped. Miss Beard? It just stopped counting. But it's not rapid. It's not. It's not rapidly decreasing, yeah. Yeah, so just focus on the pricing for a moment, then that would mean, if you prevailed on that, they would have to put, I know you said we're not asking for a disclaimer, but in order to have those things on the shelf together, they would have to put a disclaimer on the rapid-release gel caps saying, warning, or not warning, but this is not necessarily faster than our regular tablets, and that can't be, right? That would be preempted. If they had to put a disclaimer on in order for you to be satisfied, that would be problematic. Yes, but to be clear, we're not asking for any injunctive relief, and that wouldn't be the solution. The solution would be not to charge a price premium, or more importantly for the marketing and advertising claims, just don't falsely claim that it's faster. I mean, that's the, let me just address that. I mean, I'm not saying you need to change the label. I'm just saying don't claim that the rapid-release is faster than the non-rapid-release. Well, they don't actually say it's faster. You're saying implicitly they're saying it's faster? They don't say it's faster than their tablets, do they? Well, they said, quote, one ad said, new gel caps with specially designed holes to release powerful medicines even faster than before. Rapid-release, rapid relief. They also said only Tylenol rapid-release gels, end quote, supposedly have this. I think the pleadings clearly admit of the claim that they claim that it is faster and therefore better than competing products. I think that's clearly within the scope of the complaint here. I think the court has to accept that as true and then rule accordingly. Counsel, when you say you're not seeking injunctive relief, I'm looking at your complaint. It does say you're asking for an order requiring Johnson & Johnson to adequately represent the true nature of their product and an order issuing a nationwide recall, quote, to address product labeling and packaging and issuing warnings and notices. Have those been abandoned?  I misspoke, Your Honor. I apologize. We did allege that those parts of the complaints are part of the labeling claims that we've explicitly abandoned. So you view the, so those are all, to your mind, those are strictly limited to the labeling claim, that these, even though you're saying adequately represent the true nature, quality, and capability, you mean only in the labeling reign? You're not asking for an order requiring them to be accurate in their marketing? Correct. I mean, our claim is about the marketing, the pricing, the advertising. It's mostly a money damages claim. Okay, so that's what's left of your relief request after you've dropped the labeling claim is financial damages, damages only. Your Honor, it's a very fair question. I don't want to concede right now that we don't seek any injunctive relief, but not I would have to think about that. I'm not prepared to, but I can say that we're focusing on that. But I can certainly say we're not requesting any injunctive relief related to the label. I just want to go back. I spent a lot of time looking through your complaint, seeing whether or not you were claiming that they allege anywhere that they're faster than competitors and or even that they're faster than their tablet. And I didn't see any allegation, just because they talk about drilling holes in it and it doesn't say anything about competitors. What are they saying about that they're faster than competitors? Your Honor, I'd have to flip through the complaint real quick to find the specific allegation. Well, if you can do that in your rebuttal, I don't want to waste your time. But I was looking because I understand that argument. If they said we're faster than our competitors and that's false, I don't know that that claim would be briefed. And I think that could be actionable. We'll see what your adversary says about that. Well, I mean, I will say this. It was clear enough in the briefing to the district court that it addressed the claim. I mean, the district court never said it was never made. No, no, I'm not saying you didn't make a claim that the advertising slash pricing was deceptive. The district court rejected that. So I'm saying the question is whether or not your claim would require them to have a disclaimer or not to somehow alter their labeling. And if you had a claim in there saying that they put, let's say they did an advertisement on TV that said we're faster than our competitors, our rapid release is faster than our competitors, they would have to change the label. That doesn't implicate the FDA. But you don't have a claim like that. Well, paragraph 38 says J&J advertises the tablets as allowing, quote, the release of powerful medicine even faster than before. So before what? I mean, at the very minimum, before J&J created its own rapid release products, at least as compared to J&J's own products. So that you're saying implies that it's faster than their own product. At least that. I mean, faster than before. How about faster than before those products were introduced? So faster than all competing products that existed. They say they haven't used that phrase since 2009. Your Honor, if there's limitations issues, I'm remanded. I'm happy to address that. We can address those. Paragraph 39 as well, that has, quote, a new form of Tylenol that releases pain medicine faster than before. I understand there are, I mean, all those arguments about the facts and what it is, I mean, the product was taken off the market. It was reintroduced in 2017. They sort of remade all these claims in 2017. I know, but then in paragraph 40 going forward, when they reintroduced the product, you didn't say anything about them saying even faster than before. That was, I read that as being prior to 2009, they did that. And then you have a whole series of marketing statements when they reintroduced the product. And I didn't see anything about even faster than before. Your Honor, I would, my position is that the complaint clearly covers those claims. So you think all these cases then that they cite, I mean, they're not binding on us, but the Moussaka-Rossner, the Morgan case, the Sapienza case, Hitchcock by Judge Seibel, I mean, they're not distinguishable. They're just, you think they're just all incorrect? Yeah, so I read all those cases very closely. A few of them are distinguishable because they never really grappled with this distinction we're making between advertising, pricing, and labeling. I will admit that the Moussaka-Rossner case is directly on point. And so, yes, I just think that they got it wrong. Bischoff and Morgan, I can't really exactly figure out whether they addressed that claim or not. I went and looked at the pleadings in those cases, and no one really briefed it like we did, sort of as clearly, but I do admit that at least the Moussaka-Rossner case is on point. You know, I would, yes, Your Honor, I simply think they got it wrong. And I would point to the Cora B. Energizer case from California, which to me is directly on point. That's the sunscreen case, right? I mean, the FDA says you've got to put the SPF on the label. They do it. They actually have to do it. But they falsely market and advertise that SPF 100 is better than 50 when in fact there's no difference. Anything over 50 just doesn't do anything. And that court explicitly addressed the argument and said, look, nothing about the claim they're making here, which is that you falsely say it's better, would require them to change anything on the label. And so I think that there's at least the Cora case. But they cite the other case that disagreed with that, Griswold, right? The court did cite the Griswold case. Yes, Griswold did cite that and disagreed. Fair enough, yes. You know, I'd also point to the Crozier case, which made a clear distinction between the label claims being preempted, but then advertising and marketing claims not being preempted. And that's an interesting case just because the court does preempt some claims and then not others. But yes, Your Honor, I admit that there is a split of authority here. You are, to my knowledge, the first appellate court to address this issue. You know, respectfully, district courts are institutionally different courts than this one. We're not the first to address preemption, just the first to address preemption in this factual context, correct? In this factual context, certainly, and I would say even more broadly, the first to address that I know of the claim that there's a distinction between, you know, an advertising, marketing, pricing claim and a claim that goes directly to the label. If you didn't have, you're dropping labeling, because you can see that would be preempted. If you didn't have advertising and you just had pricing alone, is someone precluded from pricing a product, even if it's the same or similar as its competitors, or inferior at a higher price? I mean, people do that. You know, some people say, I'm going to buy the more expensive because that's got to be better. Is that in and of itself? Your Honor, I'd have to think about that. In and of itself, I'm not sure if by itself it would be. Maybe it's a combination. I mean, I would just note, we cited the Colpitts v. Blue Diamond Growers case from the Southern District. Simply, that case clearly shows that in New York law, a price premium is a theory, is clearly a theory of damages when you make a false claim. That's slightly separate than Your Honor's question, I acknowledge. You know, I think it adds to the pile. We cited cases talking about how context matters. I think it's just one more part of the context. When consumers see the products right next to each other, and one costs more, and one says rapid, and one doesn't. I know, but the way to correct that, that goes back to the very beginning, they would have to put a disclaimer then. If they want to charge more for the rapid release, you would say they have to put something on the label to say this is not really better than other tablets. Or they could not charge more, or they could not falsely advertise. Assuming they are allowed to charge more, which is the premise of the question, the only way to remedy that would be a disclaimer, right? Possibly. I do think the advertising and marketing part of it is stronger than the pricing. I understand. All right, thank you. All right, Mr. Neubauer? Did I get that right? Neubauer. Good morning. Mark Neubauer on behalf of Appellee. Plaintiff's concession, as the court noted in their opening brief, buried in footnote one, that they concede preemption on the label is conclusive of this. Because if the label, as the court pointed out, is preempted, then everything else falls. Yeah, I think that's too broad, though. I think the way you brief this, it suggests that if the FDA has some labeling requirements, that any type of advertising marketing claim is preempted, because they've now decided what should be on the label. That can't be correct. Is that really your position? Well, but among other things, for example, assume we follow that path. Remember, we don't say faster, we don't say rapider, we say fast and rapid. Well, going back to that one, the closest one I thought was it said faster than before. The implication is what was before. Before would be the tablet was before, right? But that was by a product that was recalled and stopped, as they say in the complaint, was stopped in 2009 and released again in 2017. So it's really a moot, that's history. It's old news, it doesn't exist. But you would agree, just let's go back to the legal principle, if the label said we are faster than this competitor, or this is faster than our tablet, that would be actionable, if it's false, right? It's not preempted. Correct. Okay. But we don't say that. So all we say is fast and rapid. And that's, we clearly are entitled to do, under the FDA's pronouncement. But are they entitled, the issue is, are they entitled to bring a claim that's not preempted? And maybe you have a great defense. On the issue of pricing, which I was asking your opponent, just pricing something higher and then claiming that that's a misrepresentation, the only way to fix that would be to change the label so that it's not- Or to change the price. Or the price. And I don't know that you can control someone to price point, they may or may not sell. But when it comes to advertising, why should they not be able to bring claims of false advertisement, not on the label, that don't require a change to the label or FDA regulation? Because the FDA, the preemption goes to the subject area, as to what's immediate release. You would have the incongruous situation that we could have fast or rapid on the product label, but we can't show that label on a brochure. We can't show it on a display. We can't show the label in an advertisement. But the FDA's statement has to do with the release of the medication. It's actually sort of the rate that it dissolves, right? Correct. Understandably, your client takes the next step and says, this dissolves really fast, rapid release, which is allowed under the FDA, for fast relief. So the question is, are you allowed to take that step? If you're allowed to say that this is skim milk because it's less than 1% fat, can the marketer then say, and therefore you'll be skinny if you drink it, right? This is sort of the next step. What is the effect of the rapid release? Why is that covered by the FDA's monograph? Because the FDA, the rule is quite clear. It goes to the subject matter, not the specific regulation. When the FDA goes into an area, it regulates the subject matter. But why is the subject matter here not the speed at which the medicine is absorbed, as opposed to the speed at which the customer feels better? Why are those not different? Because they relate to each other. And the FDA promulgated a standard for immediate release, which was the tentative monograph, which became final under the CARES Act. The Sapienza case gives a quote from the legislative history. And it doesn't talk about the defined distinctions that the court just referenced. The exact report from the Senate report, and that appears on page three of the Sapienza. So you're saying if the FDA allows you to say immediate release, right? Right. That you could say whatever you want about relief, because it's all preempted, even if it's not true? Suppose it said, this is immediate release, and you'll feel better in five seconds. But that doesn't exist here. I know, but you keep saying that it's preempting the whole field. And I think we're trying to probe whether or not it doesn't preempt the whole field. It depends what the label says, right? In part. It depends what the advertisement says. It depends what the advertisement says, right? Well, but if the advertisement is consistent with the label, which is all we have here, that's a phantom issue. It doesn't exist here. That's the real issue, though. Is the advertisement, or he would say the combination, the context of all the statements together, the same as the label? Right? Isn't that the question? Among other things. Because what the Senate report said is, quote, no state or local government is permitted to impose different or additional requirements that relate to the subject matter covered by the three federal laws. Right. So let's think about it. But we're asking you, can the subject matter of release, which is easily identifiable in a bench test, right? You sort of put the caplet in some water and see what happens. It's probably more complicated than that. And relief, because the ads say, you know, it will effectively relieve pain at rapid speed. And so I hear you. It's the subject matter. But why is that not a different subject matter? It's not because it talks about rapid and immediate dissolution, which is the issue involved. And that's all we say. We never said it's faster than anybody else. The one faster appeared in a prior product that was taken off the market in 2009. Didn't appear. This product wasn't reintroduced in 2017. And the words faster or more rapid than other products is not present in this case. If you had it, it might be a different story. But ironically, I would point out to the court the schedule that appears from the dissolution study, which appears on page 18 of our brief. And that study is very interesting. Because ironically, we are faster. That's with the own documents. The difference between the tablet. The big issue is whether your tablet is faster than your gel pen. But we don't say it is. I know. But it's not faster. No. And we don't say it is faster. So, counsel, I think what we're trying to get at here, in essence, is the question is, can you envision a scenario where the advertising, there could be a state law claim for false advertising that would not be preempted under this type of product generally. And it sounds like you were saying, if you had claimed that it was faster than other products, then in your advertisement, then that might be an issue where you would agree that would be a claim that might be valid. It might be, but that doesn't exist here. Because the issue is tethering everything to what was said in the label. And it's fast, not faster. And I would direct again, the difference between tablets and gel caps is 22.8 seconds. This was illuminating to me when I did it. I found out you actually get something better over a non-generic. The difference between the rapid release gel cap and the Rite Aid rapid release was 3.94 minutes to 9.8 minutes. And when you have a splitting headache, five minutes is important. Well, I think that's your opponent's claim, isn't it? That most people would be surprised that regular Tylenol may be even faster than rapid or- Going to your question on, because we don't make the claim that it's faster. Going to your question on- No, I understand that. His whole argument is that everything taken together, that a reasonable consumer would think it's faster. Not just the price, but the price combined with the labeling together. And that really- But the key is the labeling. And we comply with the FDA regulation. The advertising and the pricing together would lead a reasonable consumer to believe that the rapid release is faster than the tablet when it is not. But that is a claim that's not presented. And one point to address your question on pricing. There is a difference. One is a tablet. The other takes the tablet and puts it in a capsule form. And their own complaint has consumer allegations that I like the tactile feel of a capsule. The consumer sees both. They see the price differential. If they want to go for the cheaper product, they can. And there's nothing in this in conclusion, your honor, with the issue of faster and more rapid does not exist in this case. It's a phantom issue. What we did, the decision by the courts on the same product in the four court cases that were cited were all correct. And we would urge the court to affirm the preemption here. Thank you very much. Mr. Signer, you have two minutes in rebuttal. Your honor, paragraph 51E of the complaint is a 2023 ad for the product. Quote, new Tylenol rapid release gels, gel cups with- Hold on, hold on, let me find it. Sorry, 51E. 51E. In fact, this whole paragraph is ads from, if you look on the bottom, last accessed 2023 when we filed the complaint. Gel cups with specially designed holes to release powerful medicine even faster than before. If you go up to 51B, it's unique laser drilled holes help release medicine faster. If you go to paragraph 47, this is our summarizing our allegations. Post-2017, with this marketing going on, J&J sought and continues to seek to further this falsehood, colon, that rapid release Tylenol actually provides faster relief than other cheaper acetaminophen products. I mean, paragraph 47 and 51, you can't be any clearer than that. So let me just ask you about that 2023 ad. I just clicked on the link, and it's posted by some guy, not by Johnson & Johnson, 15 years ago. Is that a current ad, that 2023 ad? I did not know that, your honor. I just clicked the link in your brief, and that probably was a post by a fellow with 590 subscribers 15 years ago, not posted by Johnson & Johnson. So how do we know if that's a 2023 ad? I had not clicked on that. I should have. Your honor, I appreciate that. I think paragraph 47, though, provides- Judge Miriam is fast. She's rapid. I would say very rapid. But paragraph 47 is clear as day. I mean, this falsehood, this falsehood, colon, that rapid release Tylenol actually provides faster relief than other cheaper acetaminophen products. That's not a quote. Correct. I mean, that is our- The point is, the opposing counsel says that we never made this claim in the case, and there it is in the complaint. Clear as day. And an allegation has to be taken as true. And if you look at after that, then we have a bunch of evidence, allegations, slash evidence of consumer confusion. A lot of them don't go directly to what we're talking about, but I will note that one of them says, this is a consumer, I can't really tell that they work any faster than any other pain relief pill. That's paragraph 55C. And so I'm just- I'm defending the principle that we alleged this here, that this claim is before your honors. I think it clearly is. If the court understands- The point that Judge Miriam was focused on, I didn't see that in your complaint. That you're not alleging that the pace of the relief is somehow deceptive. It's all about the release, right? Not its effect and how quickly you're relieved of pain. There's no allegation that it's deceptive in that manner, right? Correct. It's deceptive in that it's faster, slash, therefore better than other products. In your complaint, subparagraph 51E, drops the footnote of 46 with the link, which is, I believe, the link that Judge Miriam accessed, is a YouTube video. So that's not an advertisement. Can you point to us to an advertisement that's after 2009, that says that it's faster than before, or faster than other products? I would have to go to all those links down there, and presuming that they're all from older videos, and presuming that none of them are the last couple years, then I cannot point to anything right now, specifically in the complaint. But I think that paragraph 47, all the other allegations, clearly admit of this. That seems to me like a discovery issue. If it turns out that we're barred by limitations, and there are no such representations, that is totally fine. We will lose appropriately. I don't think we lose on that right now. But no, Your Honor, I cannot point to an allegation in the complaint right now. Thank you. Thank you both for a reserved decision. Have a great day.